FILED ___ LODGED
___ RECEIVED ___ COPY

AUG 1 4 2013

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

SEALED

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

CR-13-1143-PHX-NVW (DKD)

United States of America,

Plaintiff,

v.

1. Danny's Management Services LLC;
2. Danny's Family Limited Partnership;
3. Danny's Family Carousel, Inc.;
4. Danny's Family Companies LLC;
5. Danny's Family Companies II LLC;
6. Paradise Village Car Care Centre, Inc.;
7. Twentieth & Highland LLC;
8. Danny's Scottsdale & TB LLC;
9. National Car Care Development Corp.;
10. 84th & Bell LLC;
11. 3rd & Bell LLC;
12. Danny's Tatum LLC;
13. 83rd & Union Hills LLC;
14. Danny's Happy Valley LLC;
15. Danny's Raintree & Northsight  LLC;
16. Danny's Crossroads LLC;
17. Danny's San Tan LLC;
18. Danny's Tempe LLC;
19. Juan Ruiz-Gonzalez;
20. Atilano Carlos Vazquez-Escorcza;
21. Henry Hernandez-Alonso;
22. Jack Vincent Edlund;
23. Oscar Aguilar-Gastelum;
24. Daniel Flores-Arrellano;
25. Antonio Jose Baca;
26. Humberto Dominguez;
27. Manuel De Jesus Aldaco;
28. Miguel Mejia-Estrada;
29. Martin Mejia-Estrada;
30. Juan Zarate-Carreon;
31. Apolinar Jimenez;
32. Joshua Justin Cortner;

Defendants.

**INDICTMENT**

VIO:  8 U.S.C. § 1324a(a)(1)-(2), (f)(1)
(Pattern/Practice of Knowingly
Employing Unauthorized Aliens)
Count 1

18 U.S.C. § 371
(Conspiracy)
Count 2

18 U.S.C. § 1028A(a)(1)
(Aggravated Identity Theft)
Counts 3-16

18 U.S.C. § 1028(a)(7) and (b)(2)
(Identity Theft)
Counts 17-30

18 U.S.C. § 1546(b)
(Immigration Document Fraud)
Counts 31-54

18 U.S.C. § 1001(a)(2)
(False Statement)
Counts 55-78

18 U.S.C. § 982(a)(6) and 28
U.S.C. § 2461(c)
(Forfeiture Allegation)

THE GRAND JURY CHARGES:

A.    **Introduction**.

1.    This Indictment charges the corporate entities responsible for the operation and management of Danny's Family Car Wash ("DFC"), a chain of car washes located in and around Phoenix, Arizona, with criminal responsibility for engaging in a conspiracy to employ unauthorized aliens.

2.    As explained below, DFC was notified in early 2011—following an administrative audit of the company's employment paperwork by federal immigration officials—that a substantial percentage of the company's employees were aliens who lacked authorization to work in the United States.  In response, DFC's management purported to terminate those unauthorized aliens from its work force by April 2011.  Nevertheless, soon afterward, DFC began re-hiring many of those same individuals by allowing them to assume "new" identities during the re-hiring process (which enabled them to pass background checks when their "new" identities were processed through the E-Verify system).  In many instances, DFC's location managers, and other members of DFC's upper management, affirmatively assisted these unauthorized aliens in obtaining their "new" identities—sometimes going so far as to help them secure counterfeit identification documents—and in falsifying the certification documents that needed to be completed during the re-hiring process.

3.    Accordingly, this Indictment charges the DFC entities, as well as many individual DFC managers, with committing (or aiding-and-abetting or conspiring to commit) the crimes of engaging in a pattern or practice of knowingly hiring and employing unauthorized aliens; aggravated identity theft; identity theft; immigration document fraud; and false statements.

B.    **The Corporate Entities**.

At all times relevant to this Indictment:

4.    An individual (the "DFC Owner") owned, controlled, and operated thirteen (13) DFC locations in the greater Phoenix metropolitan area.  The DFC Owner exercised ownership and control over these businesses through an interlocking series of limited liability companies ("LLC"), limited partnerships ("LP"), and other entities.

5.    First, each individual DFC location was owned by a single-purpose LLC or other corporate entity.  A chart setting forth the relationship between each DFC location and the corresponding entity is set forth below:

| No. | Location Name | Location Address | Entity |
|---|---|---|---|
| 1 | Paradise Village | 12020 N. Tatum Blvd. Phoenix, AZ 85028 | PARADISE VILLAGE CAR CARE CENTRE, INC. |
| 2 | 20th & Highland | 1954 E. Highland Ave. Phoenix, AZ 85016 | TWENTIETH & HIGHLAND LLC |
| 3 | Tierra Buena | 15515 N Scottsdale Rd. Scottsdale, AZ 85250 | DANNY'S SCOTTSDALE & TB LLC |
| 4 | Scottsdale & Bell | 16610 N. Scottsdale Rd. Phoenix, AZ 85254 | NATIONAL CAR CARE DEVELOPMENT CORP. |
| 5 | 84th & Bell | 8369 W. Bell Road Peoria, AZ 85345 | 84TH & BELL LLC |
| 6 | 3rd & Bell | 315 W. Bell Road Phoenix, AZ 85023 | 3RD & BELL LLC |
| 7 | Danny's Gourmet Market | 21001 N. Tatum Blvd. Phoenix, AZ 85050 | DANNY'S TATUM LLC |
| 8 | 83rd & Union Hills | 18736 N 83rd Avenue Peoria, AZ 85345 | 83RD & UNION HILLS LLC |
| 9 | Happy Valley | 2501 W. Happy Valley Rd. Phoenix, AZ 85027 | DANNY'S HAPPY VALLEY LLC |
| 10 | Raintree & Northsight | 14717 N. Northsight Blvd. Scottsdale, AZ 85260 | DANNY'S RAINTREE & NORTHSIGHT LLC |
| 11 | Crossroads | 4027 S. Gilbert Road Gilbert, AZ 85297 | DANNY'S CROSSROADS LLC |
| 12 | San Tan | 2870 S. Market St. Gilbert, AZ 85296 | DANNY'S SAN TAN LLC |
| 13 | Tempe Towne | 2090 E. Rio Salado Pkwy. Tempe, AZ 85281 | DANNY'S TEMPE LLC |

6.    The next level of the DFC ownership structure was composed of three entities: DANNY'S FAMILY CAROUSEL INC., DANNY'S FAMILY COMPANIES LLC, and DANNY'S FAMILY COMPANIES II LLC. These entities were used to hold, or otherwise own and control, the thirteen LLCs and other entities identified in the previous paragraph.  A chart setting forth the relationship between these two sets of entities is set forth below:

| Holding Company | Individual Locations |
|---|---|
| DANNY'S FAMILY CAROUSEL INC. | (1) PARADISE VILLAGE CAR CARE CENTRE, INC.<br>(4) NATIONAL CAR CARE DEVELOPMENT CORP. |
| DANNY'S FAMILY COMPANIES LLC | (2) TWENTIETH & HIGHLAND LLC<br>(3) DANNY'S SCOTTSDALE & TB LLC<br>(5) 84TH & BELL LLC<br>(6) 3RD & BELL LLC<br>(7) DANNY'S TATUM LLC<br>(8) 83RD & UNION HILLS LLC<br>(11) DANNY'S CROSSROADS LLC<br>(12) DANNY'S SAN TAN LLC<br>(13) DANNY'S TEMPE LLC |
| DANNY'S FAMILY COMPANIES II LLC | (9) DANNY'S HAPPY VALLEY LLC<br>(10) DANNY'S RAINTREE & NORTHSIGHT LLC |

7.     A single entity, DANNY'S FAMILY LIMITED PARTNERSHIP, comprised the next level of the DFC ownership structure. This entity served as the "principal shareholder" of the first holding company identified in the previous paragraph (DANNY'S FAMILY CAROUSEL INC.) and acted as a "member" of the second and third holding companies identified in the previous paragraph (DANNY'S FAMILY COMPANIES LLC and DANNY'S FAMILY COMPANIES II LLC).

8.     The final corporate entity associated with the DFC ownership structure was DANNY'S MANAGEMENT SERVICES LLC. This entity served as the general partner of DANNY'S FAMILY LIMITED PARTNERSHIP.

9.     The eighteen entities named in paragraphs 5-8 above—that is, PARADISE VILLAGE CAR CARE CENTRE, INC., TWENTIETH & HIGHLAND LLC, DANNY'S SCOTTSDALE & TB LLC, NATIONAL CAR CARE DEVELOPMENT CORP., 84TH & BELL LLC, 3RD & BELL LLC, DANNY'S TATUM LLC, 83RD & UNION HILLS LLC, DANNY'S HAPPY VALLEY LLC, DANNY'S RAINTREE & NORTHSIGHT LLC, DANNY'S CROSSROADS LLC, DANNY'S SAN TAN LLC, DANNY'S TEMPE LLC, DANNY'S MANAGEMENT SERVICES LLC, DANNY'S FAMILY LIMITED PARTNERSHIP, DANNY'S FAMILY CAROUSEL INC., DANNY'S FAMILY COMPANIES LLC, DANNY'S FAMILY COMPANIES II LLC—will be referred to hereinafter in this Indictment as "THE DFC ENTITIES."

4

1    10.    Finally, THE DFC ENTITIES also utilized a professional employer organization

2   ("the PEO") to coordinate and administer their human resources responsibilities. The PEO

3   generally acted as the "co-employer" of DFC's employees. Specifically, the PEO would serve

4   as the "statutory employer" for purposes of paying wages, withholding taxes, and complying

5   with workers' compensation laws, while THE DFC ENTITIES would serve as the employer for

6   all other purposes.

7   C.    **Employers' Verification Duties Under Federal and State Law**.

8    11.    The Immigration Reform & Control Act ("IRCA") of 1986 requires all employers

9   and prospective employees to complete an Employment Eligibility Verification Form ("Form

10  I-9") during the hiring process. To complete the Form I-9, a prospective employee must provide

11  basic identifying information, assert his or her immigration status, and supplement the form with

12  documentation evidencing his or her claimed identity and immigration status. IRCA prohibits

13  employers from hiring and employing workers who are not authorized for employment.

14  Employers also are prohibited from continuing to employ an individual after obtaining

15  knowledge that the individual is unauthorized for employment.

16   12.    On January 1, 2008, the Legal Arizona Workers Act ("LAWA"), also known as the

17  "Employer Sanctions Law," went into effect in Arizona. LAWA makes it mandatory for most

18  Arizona businesses to use the "E-Verify" system—a federal verification system that

19  interconnects with databases maintained by the Social Security Administration ("SSA") and U.S.

20  Citizenship & Immigration Services ("CIS")—during the hiring process.

21   13.    To use E-Verify, an employer inputs information provided by the applicant

22  (including name, date of birth, Social Security number, and/or alien registration number) into

23  the system. E-Verify then queries SSA and CIS databases to determine whether this information

24  is consistent with—that is, is "verified" by—the information in the databases. Such queries can

25  generate only two results: (1) Employment Authorized or (2) Tentative Non-Confirmation. In

26  short, the only way an unauthorized alien can obtain authorization during the E-Verify process

27  is to assume the identity of an authorized worker and provide documents reflecting the other

28  individual's name and other personal identifiers.

. **The I-9 Audit And Resulting "Termination" Of 942 Unauthorized Employees**.

14.    In September 2010, federal immigration officials notified DFC that they wished to conduct an administrative audit of the company's Forms I-9 (and other employment paperwork). DFC's management and the PEO responded by producing Forms I-9 pertaining to approximately 1,912 current or recently-active employees.

15.    The resulting audit revealed that 942 of those 1,912 individuals—that is, approximately 50% of DFC's workforce—had presented insufficient or ineligible documents for employment at the time of hire.

16.    In or around March 2011, federal immigration officials notified DFC's management of the results of the audit by issuing a Notice of Suspect Documents ("NSD"). This notice identified all 942 of the suspect employees by name and provided those employees with an opportunity to contest the government's findings and conclusions regarding their ineligibility.

17.    On or around April 25, 2011, DFC's general counsel submitted a signed certification letter to federal immigration authorities indicating that, as of April 23, 2011, DFC had terminated the employment of all 942 employees listed on the NSD.

E.    **The Conspiracy To Re-Hire The Terminated Employees Under New Identities**.

18.    Soon after "terminating" the unauthorized employees in April 2011, DFC began rehiring many of the same individuals under new identities. In many instances, DFC's managers affirmatively assisted the employees in procuring identification documents and other personal identifiers that belonged to third parties (*e.g.,* supplying employees with names, social security cards and numbers, and/or driver's licenses that belonged to others) to facilitate the rehiring process. DFC's managers also took other steps to conceal the conspiracy, including shifting re-hired employees between DFC locations. Examples of such conduct are set forth in subparagraphs a-u below:

a.    Re-Hiring RUIZ-GONZALEZ Under The Identity Of "Reymundo R."

19.    One of the unauthorized aliens who was identified on the NSD—and then purportedly fired by DFC by April 23, 2011—was defendant JUAN RUIZ-GONZALEZ ("RUIZ-GONZALEZ").

20.    Nevertheless, DFC subsequently re-hired RUIZ-GONZALEZ by allowing him to assume the identity of "Reymundo R."  Since at least 2012, RUIZ-GONZALEZ has worked as a manager at various DFC locations.

    b.    <u>Re-Hiring VAZQUEZ-ESCORCZA Under The Identity Of "Cirillo R."</u>

21.    One of the unauthorized aliens who was identified on the NSD (under a different assumed name)—and then purportedly fired by DFC by April 23, 2011—was defendant ATILANO CARLOS VAZQUEZ-ESCORCZA ("VAZQUEZ-ESCORCZA").

22.    Nevertheless, DFC subsequently re-hired VAZQUEZ-ESCORCZA by allowing him to assume the identity of "Cirillo R."  Since at least December 2011, VAZQUEZ-ESCORCZA has worked as a manager at various DFC locations, including the San Tan location.

    c.    <u>Re-Hiring Albertico G.S. Under The Identity Of "Vidal P."</u>

23.    One of the unauthorized aliens who was identified on the NSD—and then purportedly fired by DFC by April 23, 2011—was Albertico G.S.

24.    Nevertheless, on or around May 9, 2012, Albertico G.S. spoke to his former manager, RUIZ-GONZALEZ, on several occasions to discuss being re-hired.  During these conversations, RUIZ-GONZALEZ explained that Albertico G.S. could obtain a new identity from defendant HENRY HERNANDEZ-ALONSO ("HERNANDEZ"), another DFC manager, and stated that once Albertico G.S. obtained the new identity, RUIZ-GONZALEZ would allow Albertico G.S. to continue working at DFC.  Finally, RUIZ-GONZALEZ also stated that he would provide the necessary employment paperwork to defendant JACK VINCENT EDLUND ("EDLUND"), DFC's general manager of operations.

25.    On or around May 15, 2012, Albertico G.S. spoke with RUIZ-GONZALEZ on several additional occasions about the re-hiring plan.  During these conversations, RUIZ-GONZALEZ confirmed that HERNANDEZ could supply Albertico G.S. with a new identity, stated that the true owner of the identity was "Vidal P.," and explained that he'd spoken to EDLUND about the re-hiring plan and that EDLUND had approved the plan.  RUIZ-GONZALEZ also claimed that DFC's PEO was aware that employees were presenting counterfeit identity documents.

26.     On or around May 17, 2012, Albertico G.S. again spoke with RUIZ-GONZALEZ about the re-hiring plan, and RUIZ-GONZALEZ instructed him to go to DFC's San Tan location to meet with VAZQUEZ-ESCORCZA, another DFC manager.   Albertico G.S. complied. During the subsequent meeting, VAZQUEZ-ESCORCZA acknowledged that he was working under an assumed identity (*i.e.*, "Cirillo R."), asked Albertico G.S. to confirm the new identity (*i.e.*, "Vidal P.") that had been provided by RUIZ-GONZALEZ, and assured Albertico G.S. that EDLUND was aware of the plan and would provide the necessary paperwork.

27.     Also on May 17, 2012, Albertico G.S. and RUIZ-GONZALEZ left the San Tan location and traveled together to HERNANDEZ's house.   Once at the house, RUIZ-GONZALEZ and HERNANDEZ assisted in taking a picture of Albertico G.S. and electronically transmitting the picture to a document vendor.   Soon afterward, the vendor came to HERNANDEZ's house and delivered a fake driver's license (which depicted the photograph of Albertico G.S. and the name and other personal identifiers of "Vidal P.") and a fake social security card (which bore the name and social security number of "Vidal P.").

28.     Later that day (also on or around May 17, 2012), RUIZ-GONZALEZ and Albertico G.S. traveled to the PEO's office.   There, RUIZ-GONZALEZ assisted Albertico G.S. in completing a new Form I-9 and other employment paperwork by posing as "Vidal P."

d.      <u>Continuing To Employ AGUILAR-GASTELUM Without Authorization.</u>

29.     Defendant OSCAR AGUILAR-GASTELUM ("AGUILAR-GASTELUM") is an alien who has worked for DFC, often in a managerial capacity, since at least 2009.   On August 30, 2011, AGUILAR-GASTELUM's employment authorization document ("EAD") expired.

30.     Nevertheless, DFC has continued to employ AGUILAR-GASTELUM after the expiration of his EAD.   Throughout 2012 and 2013, AGUILAR-GASTELUM has worked as a manager at various DFC locations.

e.      <u>Re-Hiring FLORES-ARRELLANO.</u>

31.     One of the unauthorized aliens who was identified on the NSD (under a different assumed name)—and then purportedly fired by DFC by April 23, 2011—was defendant DANIEL FLORES-ARRELLANO ("FLORES-ARRELLANO").

32.   Nevertheless, DFC subsequently re-hired FLORES-ARRELLANO by allowing him to assume a new identity.   Since at least 2011, FLORES-ARRELLANO has worked as a manager for DFC, including at the Paradise Village and 20th & Highland locations.

f.   <u>Re-Hiring Criseria B.G. Under The Identity Of "Selena C."</u>

33.   One of the unauthorized aliens who was identified on the NSD—and then purportedly fired by DFC by April 23, 2011—was Criseria B.G.

34.   Nevertheless, DFC subsequently re-hired Criseria B.G. by allowing her to assume the identity of "Selena C."   Since at least September 2011, Criseria B.G. has worked for DFC, primarily at the Paradise Valley location.

35.   DFC's management participated in, or otherwise was aware of, Criseria B.G.'s procurement and use of this new identity.  Specifically, around the time of her initial termination, Criseria B.G. was told by her then-manager, defendant ANTONIO JOSE BACA ("BACA"), that she could continue to work if she obtained a "good" social security number and/or other new identifiers.

36.   In or around September 2011, Criseria B.G. met with EDLUND to explain that she wished to begin working under the name ("Selena C.") of an acquaintance.  EDLUND approved this plan, called a location manager to let him know that Criseria B.G. would soon start working at his location, and then filled out an employee authorization form (which was later presented to the PEO) stating that EDLUND approved the hiring of "Selena C."

37.   Criseria B.G. worked under the "Selena C." identity until on or around June 20, 2012.  Around that time, Criseria B.G. informed her then-manager, AGUILAR-GASTELUM, that "Selena C." was demanding that Criseria B.G. stop using the name "Selena C."  In response, AGUILAR-GASTELUM advised Criseria B.G. to obtain a new social security number from somebody else and stated that Criseria B.G. could continue working for DFC in the meantime by working, off the books, for tips.

38.   On or around June 23, 2012, Criseria B.G. was instructed by FLORES-ARRELLANO, another DFC manager, that she could continue working for DFC by "borrowing" a different identity.   Specifically, FLORES-ARRELLANO stated that a different DFC

9

1    employee—who also was an unauthorized alien and had thus been working under another

2    person's identity—had recently left the company, that the stolen identity was still in DFC's

3    system, and that Criseria B.G. could simply take-over the stolen identity and begin working

4    under that name (without filling out any employment paperwork).

5        g.    Re-Hiring Efren T.V. Under The Identities Of "Duane C." and "Michael L."

6    39.    One of the unauthorized aliens who was identified on the NSD—and then

7    purportedly fired by DFC by April 23, 2011—was Efren T.V.

8    40.    Nevertheless, DFC subsequently re-hired Efren T.V. by allowing him to assume

9    several new identities, including "Duane C." and "Michael L." Since approximately May 2011,

10   Efren T.V. has worked for DFC, primarily at the Happy Valley and 84th & Bell locations.

11   41.    DFC's management participated in, or otherwise was aware of, Efren T.V.'s

12   procurement and use of these new identities. Specifically, shortly before being terminated, a

13   group of employees at DFC's 84th & Bell location (which included Efren T.V.) were told by

14   their then-manager, defendant HUMBERTO DOMINGUEZ ("DOMINGUEZ"), that they

15   couldn't keep working at DFC because of inquiries by immigration officials and that the only

16   way to resume working would be to find someone who had papers or a good Social Security

17   number.

18   42.    In or around May 2011, Efren T.V. told DOMINGUEZ that an acquaintance

19   ("Duane C.") was going to apply to work at DFC so that Efren T.V. could thereafter assume the

20   acquaintance's identity. DOMINGUEZ approved this proposal. Soon afterward, "Duane C."

21   applied to work at DFC and then gave the completed employment documents to Efren T.V.

22   Efren T.V., in turn, gave the documents to DOMINGUEZ, who accepted the documents and

23   allowed Efren T.V. to begin working at DFC's 84th & Bell location as "Duane C."

24   43.    After working as "Duane C." for a period of time, Efren T.V. told DOMINGUEZ

25   that he didn't want to use that identity anymore (because his wages were being garnished due

26   to child support withholdings associated with the true owner of the identity). DOMINGUEZ

27   responded by instructing Efren T.V. to find another identity and Social Security number.

28   44.    Around this time, DOMINGUEZ was transferred to another DFC location and

1    BACA began serving as a manager at DFC's 84th and Bell location.  Afterward, Efren T.V.

2    asked BACA if he could assume the identity of another acquaintance ("Michael L.") who had

3    previously worked for DFC.  After confirming that "Michael L." was no longer employed at

4    DFC but was still in the DFC computer system, BACA allowed Efren T.V. to assume that

5    identity.  However, BACA cautioned Efren T.V. not to say anything to anyone.

6        45.    Following this episode, defendant MANUEL DE JESUS ALDACO ("ALDACO")

7    began serving as Efren T.V's manager.  Initially, ALDACO asked employees to produce an

8    identification document in order to collect their paychecks.  In response, Efren T.V. told

9    ALDACO that he didn't have an identification document because he was working under an

10   assumed identity.  ALDACO stated that he didn't have a problem with that and continued to

11   employ Efren T.V., often handing Efren T.V. his paychecks under the assumed name of

12   "Michael L."

13       46.    On two occasions in 2012 (one around June 2012 and one around December 2012),

14   ALDACO wrote letters in which he falsely indicated that Efren T.V. worked for him as a

15   landscaper and was paid in cash.  In these letters, ALDACO referred to Efren T.V. by his true

16   name, not the identity ("Michael L.") he was assuming for DFC employment purposes.  (The

17   purpose of these letters was to enable Efren T.V. to prove to an insurance company that he was

18   earning wages, which Efren T.V. couldn't do with his DFC pay records because those records

19   didn't reflect his true name.)

20       h.    Re-Hiring Eladio P.L. Under The Identities Of "Noel G." and "Jorge J.S."

21       47.    One of the unauthorized aliens who was identified on the NSD—and then

22   purportedly fired by DFC by April 23, 2011—was Eladio P.L.

23       48.    Nevertheless, DFC subsequently re-hired Eladio P.L. by allowing him to assume

24   several new identities, including "Noel G." and "Jorge J.S."  Since approximately July 2011,

25   Eladio P.L. has worked for DFC, primarily at the Paradise Valley and Happy Valley locations.

26       49.    DFC's management participated in, or otherwise was aware of, Eladio P.L.'s

27   procurement and use of these new identities.  Specifically, in or around July 2011, Eladio P.L.'s

28   former supervisor, defendant MIGUEL MEJIA-ESTRADA ("MI. MEJIA"), contacted Eladio

11

1    P.L. to ask if he had a "good" Social Security number so that he could come back to work.

2    During a subsequent meeting, MI. MEJIA helped complete, and then signed, employment

3    paperwork that identified Eladio P.L. by the name "Noel G." Once the paperwork was complete,

4    MI. MEJIA instructed Eladio P.L. to take the completed paperwork to the PEO for processing.

5    After Eladio P.L. complied, he was re-hired by DFC under the assumed identity of "Noel G."

6        50.     In or around July 2012, MI. MEJIA advised Eladio P.L. that he could no longer

7    work under the assumed identity of "Noel G." because the true owner of the identity had

8    complained after his application for government benefits had been denied (because Arizona's

9    wage reporting system showed that he was earning wages). In response, Eladio P.L. told MI.

10    MEJIA that he could obtain yet another identity and begin working under that identity. MI.

11    MEJIA agreed to this plan and later helped Eladio P.L. fill out another employment authorization

12    form that identified him as "Jorge J.S." Afterward, Eladio P.L. began working under the name

13    "Jorge J.S."

14        i.      <u>Re-Hiring Margarita B.G. Under The Identity Of "Linda M."</u>

15        51.     One of the unauthorized aliens who was identified on the NSD—and then

16    purportedly fired by DFC by April 23, 2011—was Margarita B.G.

17        52.     Nevertheless, DFC subsequently re-hired Margarita B.G. by allowing her to assume

18    the identity of "Linda M." Since approximately May 2011, Margarita B.G. has worked for DFC

19    at various locations.

20        53.     DFC's management participated in, or otherwise was aware of, Margarita B.G.'s

21    procurement and use of this new identity. Specifically, on or around May 9, 2011, Margarita

22    B.G. met with EDLUND, told him she'd like to return to work, and presented him with a

23    counterfeit Arizona identification card and Social Security Card bearing the name "Linda M."

24    EDLUND, in turn, filled out paperwork that authorized her to work at DFC under this assumed

25    identity and then instructed her to take it to the PEO's office for processing. Margarita B.G.

26    followed this instruction and was successfully re-hired under the new identity.

27        54.     On or around May 10, 2011, Margarita B.G. reported to work at a DFC location.

28    Upon her arrival, she was recognized by BACA, her previous manager, who referred to her by

1  her true nickname and asked which name she was now using to work.  In response, Margarita

2  B.G. provided BACA with the new identity ("Linda M.") she had assumed.

3      55.    In or around May 2012 (by which time Margarita B.G. was working at DFC's 20th

4  & Highland location), her then-supervisor, defendant MARTIN MEJIA-ESTRADA ("MA.

5  MEJIA"), advised that she could no longer work under the assumed identity of "Linda M."

6  because the true owner of the identity had called DFC to complain.  Margarita B.G. agreed and

7  temporarily stopped working at DFC.

8      56.    In or around July 2012, Margarita B.G. asked MA. MEJIA if she could return to

9  work.  Margarita B.G. further explained that she didn't have another identity but would be

10  willing to work for tips only.  MA. MEJIA agreed to this proposal and allowed Margarita B.G.

11  to start working for tips shortly afterward.

12      j.    Re-Hiring ZARATE.

13      57.    One of the unauthorized aliens who was identified on the NSD—and then

14  purportedly fired by DFC by April 23, 2011—was defendant JUAN ZARATE-CARREON

15  ("ZARATE").

16      58.    Nevertheless, DFC subsequently re-hired ZARATE by allowing him to assume a

17  new identity.  Since no later than December 2011, ZARATE has worked as a manager for DFC,

18  including at the Tempe Town and Happy Valley locations.

19      k.    Re-Hiring Rosalba L.V. Under The Identities "Yasinya R." and "Debbie G."

20      59.    One of the unauthorized aliens who was identified on the NSD—and then

21  purportedly fired by DFC by April 23, 2011—was Rosalba L.V.

22      60.    Nevertheless, DFC subsequently re-hired Rosalba L.V. by allowing her to assume

23  several identities, including the identities of "Yasinya R." and "Debbie G."    Since

24  approximately May 2011, Rosalba L.V. has worked for DFC at various locations.

25      61.    DFC's management participated in, or otherwise was aware of, Rosalba L.V.'s

26  procurement and use of these new identities.  Specifically, in or around May 2011, Rosalba L.V.

27  met with her former manager, defendant APOLINAR JIMENEZ ("JIMENEZ"), to explain that

28  she wanted to assume another person's identity ("Yasinya R.") for the purpose of regaining

employment at DFC.  JIMENEZ stated that was okay, allowed her to assume the identity, and subsequently re-hired her.

62.    In January 2012, Rosalba L.V. temporarily stopped working at DFC.  When she returned in February 2012, she was told by another DFC manager, ALDACO, that she couldn't use the "Yasinya R." identity any longer because DFC had started allowing a different DFC employee to use that name.  As a result,  another DFC manager, BACA, provided her with a new identity ("Debbie G.") and told her to use that name to "re-apply" to work at DFC at the PEO. Rosalba L.V. followed this instruction and was "re-hired" as "Debbie G."

63.    After allowing Rosalba L.V. to work as "Debbie G." for a period of time, BACA informed her that she needed to stop using the "Debbie G." identity (because the true owner had applied to Arizona for health benefits but been denied because the state's records showed that she was earning wages).  As a result, Rosalba L.V.  met with ZARATE, another DFC manager, who advised her to obtain another identity.  ZARATE further stated that he would back-date the hours she had worked under the old identity and put them on the new one.  In response, Rosalba L.V. re-assumed the identity she'd previously used ("Yasinya R.") and began receiving wages under that name.

64.    In or around December 2012, Rosalba L.V. met with ZARATE to explain that she'd finally been able to obtain a genuine EAD issued in her name and wished to begin using this document (and her own identity) because she didn't want to get in trouble.   ZARATE congratulated Rosalba L.V. on obtaining the new immigration document, filled out a DFC employment authorization form, and stated that DFC would be willing to pay her a higher wage.

l.    <u>Re-Hiring Miguel R.C. Under The Identity Of "Antonio M."</u>

65.    One of the unauthorized aliens who was identified on the NSD—and then purportedly fired by DFC by April 23, 2011—was Miguel R.C.

66.    Nevertheless, DFC subsequently re-hired Miguel R.C. by allowing him to assume the identity of "Antonio M."  Beginning around November 2011, Miguel R.C. was re-hired to work in the window-tinting centers in several DFC locations.

67.     DFC's management participated in, or otherwise was aware of, Miguel R.C.'s procurement and use of this new identity. Specifically, in or around November 2011, Miguel R.C. called his former manager, defendant JOSHUA JUSTIN CORTNER ("CORTNER"), to inquire about being re-hired. CORTNER initially said there were no openings but called Miguel R.C. a few days later to invite him to participate in a window-tinting evaluation. Afterward, CORTNER told Miguel R.C. that he'd passed the test, stated that Miguel R.C. should get another name and Social Security number, and offered to provide assistance if Miguel R.C. encountered difficulty.

68.     Several days later, CORTNER called Miguel R.C. and directed him to meet with a DFC employee named "Antonio" to get new identification documents. Miguel R.C. agreed, obtained the documents from "Antonio," and then gave the documents to CORTNER. Afterward, Miguel R.C. resumed working for DFC.

69.     After resuming his work for DFC in or around November 2011, Miguel R.C. would receive his weekly paycheck directly from CORTNER. Although Miguel R.C.'s assumed identity ("Antonio M.") would be written on the face of the paycheck, CORTNER would address Miguel R.C. by his real name. In addition, Miguel R.C.'s real name would appear on the top of the invoices associated with the vehicles whose windshields he was responsible for tinting.

m.     Re-Hiring Jaime G. Under The Identity Of "Jacob G.":

70.     One of the unauthorized aliens who was identified on the NSD (under a different assumed name)—and then purportedly fired by DFC by April 23, 2011—was Jaime G.

71.     Nevertheless, DFC subsequently re-hired Jaime G. by allowing him to assume the identity of "Jacob G." Throughout 2012 and 2013, Jaime G. has worked for DFC as a manager, including at DFC's 3rd & Bell location.

n.     Re-Hiring Lino M.V.:

72.     One of the unauthorized aliens who was identified on the NSD—and then purportedly fired by DFC by April 23, 2011—was Lino M.V.

73. Nevertheless, DFC subsequently re-hired Lino M.V. by allowing him to assume a new identity. Throughout 2012 and 2013, Lino M.V. has worked at various DFC locations, including the Tempe Towne and Crossroads locations.

    o.    Re-Hiring Hugo D.:

74. One of the unauthorized aliens who was identified on the NSD—and then purportedly fired by DFC by April 23, 2011—was Hugo D.

75. Nevertheless, DFC subsequently re-hired Hugo D. by allowing him to assume a new identity. Since at least December 2011, Hugo D. has worked at various DFC locations, including the Paradise Village location.

    p.    Re-Hiring Martin H.V.

76. One of the unauthorized aliens who was identified on the NSD—and then purportedly fired by DFC by April 23, 2011—was Martin H.V.

77. Nevertheless, DFC subsequently re-hired Martin H.V. by allowing him to assume a new identity (thought to be "Eduardo L."). Throughout 2012 and 2013, Martin H.V. has worked at various DFC locations, including the Tierra Buena and Paradise Valley locations.

    q.    Re-Hiring Candido G.R.

78. One of the unauthorized aliens who was identified on the NSD—and then purportedly fired by DFC by April 23, 2011—was Candido G.R.

79. Nevertheless, DFC subsequently re-hired Candido G.R. by allowing him to assume a new identity. Since at least March 2012, Candido G.R. has worked at various DFC locations, including the 83rd & Union Hills location.

    r.    Re-Hiring Sergio F.C.

80. One of the unauthorized aliens who was identified on the NSD—and then purportedly fired by DFC by April 23, 2011—was Sergio F.C.

81. Nevertheless, DFC subsequently re-hired Sergio F.C. by allowing him to assume a new identity. Since at least December 2011, Sergio F.C. has worked at various DFC locations, including the 3rd & Bell and Paradise Village locations.

    s.    Re-Hiring Ricardo Z.C.

1    82.    One of the unauthorized aliens who was identified on the NSD—and then
2    purportedly fired by DFC by April 23, 2011—was Ricardo Z.C.

3    83.    Nevertheless, DFC subsequently re-hired Ricardo Z.C. by allowing him to assume
4    a new identity.  Since at least May 2012, Ricardo Z.C. has worked at various DFC locations,
5    including the Happy Valley and Tierra Buena locations.

6    t.    Re-Hiring Guillermo N.H.

7    84.    One of the unauthorized aliens who was identified on the NSD—and then
8    purportedly fired by DFC by April 23, 2011—was Guillermo N.H.

9    85.    Nevertheless, DFC subsequently re-hired Guillermo N.H. by allowing him to assume
10   a new identity.  Since at least November 2011, Guillermo N.H. has worked for DFC, including
11   as a manager at DFC's 20th & Highland location.

12   s.    Re-Hiring Ildifonzo R.P.

13   86.    One of the unauthorized aliens who was identified on the NSD—and then
14   purportedly fired by DFC by April 23, 2011—was Ildifonzo R.P.

15   87.    Nevertheless, DFC subsequently re-hired Ildifonzo R.P. by allowing him to assume
16   a new identity.  Since at least December 2011, Ildifonzo R.P. has worked as a manager at DFC's
17   Tempe Town location.

18   t.    Re-Hiring Karla V.H.

19   88.    One of the unauthorized aliens who was identified on the NSD—and then
20   purportedly fired by DFC by April 23, 2011—was Karla V.H.

21   89.    Nevertheless, DFC subsequently re-hired Karla V.H. by allowing her to assume a
22   new identity.  Karla V.H. worked for DFC, primarily at the Tempe Town location, from January
23   2012 until June 2012.

24   u.    Re-Hiring David A.R.

25   90.    One of the unauthorized aliens who was identified on the NSD—and then
26   purportedly fired by DFC by April 23, 2011—was David A.R.

27   91.    Nevertheless, in or around June 2011, David A.R. was hired by a third-party entity
28   that provides window-tinting services within certain DFC locations.

## COUNT 1
### (Pattern Or Practice Of Knowingly Employing Unauthorized Aliens)

92.     The factual allegations in Paragraphs 1 through 91 are incorporated by reference and re-alleged as though fully set forth herein.

93.     Beginning in or around April 2011, and continuing through on or around August 14, 2013, in the District of Arizona and elsewhere, defendants THE DFC ENTITIES, RUIZ-GONZALEZ, VAZQUEZ-ESCORCZA, HERNANDEZ, EDLUND, AGUILAR-GASTELUM, FLORES-ARRELLANO, BACA, DOMINGUEZ, ALDACO, MI. MEJIA, MA. MEJIA, ZARATE, JIMENEZ, and CORTNER, and others known and unknown to the grand jury, engaged in a pattern and practice of hiring for employment, and continuing to employ, aliens in the United States, knowing the aliens were and had become unauthorized with respect to such employment.

In violation of Title 8, United States Code, Sections 1324a(a)(1), (a)(2) and (f)(1).

## COUNT 2
### (Conspiracy)

94.     The factual allegations in Paragraphs 1 through 93 are incorporated by reference and re-alleged as though fully set forth herein.

95.     Beginning in or around April 2011, and continuing through on or around August 14, 2013, in the District of Arizona and elsewhere, defendants THE DFC ENTITIES, RUIZ-GONZALEZ, VAZQUEZ-ESCORCZA, HERNANDEZ, EDLUND, AGUILAR-GASTELUM, FLORES-ARRELLANO, BACA, DOMINGUEZ, ALDACO, MI. MEJIA, MA. MEJIA, ZARATE, JIMENEZ, and CORTNER knowingly and intentionally agreed, confederated, and conspired with each other, and with others known and unknown to the grand jury, to commit the following offenses against the United States:

a.      8 U.S.C. § 1324a(a)(1), (a)(2), (f)(1):  Knowingly Employ Unauthorized Aliens.

b.      18 U.S.C. § 1001(a)(2):  False Statement.

c.      18 U.S.C. § 1028A(a)(1):  Aggravated Identity Theft.

d.      18 U.S.C. § 1028(a)(7) and (b)(2):  Identity Theft.

e.      18 U.S.C. § 1546(b):  Immigration Document Fraud.

## OBJECT OF THE CONSPIRACY

The object of the conspiracy was to re-hire, under new identities, unauthorized employees who purportedly had been terminated by DFC in April 2011.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means of the conspiracy are described in Paragraphs 18-91 above, which are incorporated by reference and re-alleged as though fully set forth herein.

## OVERT ACTS

In furtherance of the conspiracy, overt acts were committed. Those overt acts include, but are not limited to, the overt acts described in Paragraphs 18-91 above, which are incorporated by reference and re-alleged as though fully set forth herein.

In violation of Title 18, United States Code, Section 371.

## COUNTS 3-16
### (Aggravated Identity Theft)

96.    The factual allegations in Paragraphs 1 through 95 are incorporated by reference and re-alleged as though fully set forth herein.

97.    On or about the dates set forth below, each instance being a separate count of this Indictment, in the District of Arizona and elsewhere, defendants THE DFC ENTITIES, RUIZ-GONZALEZ, VAZQUEZ-ESCORCZA, HERNANDEZ, EDLUND, AGUILAR-GASTELUM, FLORES-ARRELLANO, BACA, DOMINGUEZ, ALDACO, MI. MEJIA, MA. MEJIA, ZARATE, JIMENEZ, and CORTNER knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to any felony violation of any provision contained in chapter 47 of Title 18, in chapter 75 of Title 18, and in chapter 8 of title II of the Immigration and Nationality Act (which provisions include, but are not limited to, 8 U.S.C. § 1324, 18 U.S.C. § 1001, and 18 U.S.C. § 1546):

| Count | Date | Means of Identification |
|-------|------|-------------------------|
| 3. | 2012 - present | Name, date of birth, social security number, alien registration number of "Reymundo R." |

| 4. | Dec. 2011 - present | Name, date of birth, social security number, alien registration number of "Cirillo R." |
|----|---------------------|----------------------------------------------------------------------------------------|
| 5. | May 2012 | Name, date of birth, social security number, alien registration number of "Vidal P." |
| 6. | Mar. 2011 - June 2012 | Name, date of birth, social security number, alien registration number of "Selena C." |
| 7. | Mar. 2011 - 2012 | Name, date of birth, social security number, alien registration number of "Duane C." |
| 8. | 2012 - present | Name, date of birth, social security number, alien registration number of "Michael L." |
| 9. | July 2011 - July 2012 | Name, date of birth, social security number, alien registration number of "Noel G." |
| 10. | July 2012 - present | Name, date of birth, social security number, alien registration number of "Jorge J.S." |
| 11. | May 2011 - May 2012 | Name, date of birth, social security number, alien registration number of "Linda M." |
| 12. | May 2011 - Dec. 2012 | Name, date of birth, social security number, alien registration number of "Yasinya R." |
| 13. | Feb. 2012 | Name, date of birth, social security number, alien registration number of "Debbie G." |
| 14. | Nov. 2011 - present | Name, date of birth, social security number, alien registration number of "Antonio M." |
| 15. | 2012 - present | Name, date of birth, social security number, alien registration number of "Jacob G." |
| 16. | 2012 - present | Name, date of birth, social security number, alien registration number of "Eduardo L." |

In violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNTS 17-30
### (Identity Theft)

98.    The factual allegations in Paragraphs 1 through 97 are incorporated by reference and re-alleged as though fully set forth herein.

99.    On or about the dates set forth below, each instance being a separate count of this Indictment, in the District of Arizona and elsewhere, defendants THE DFC ENTITIES, RUIZ-GONZALEZ, VAZQUEZ-ESCORCZA, HERNANDEZ, EDLUND, AGUILAR-GASTELUM, FLORES-ARRELLANO, BACA, DOMINGUEZ, ALDACO, MI. MEJIA, MA. MEJIA, ZARATE, JIMENEZ, and CORTNER knowingly transferred, possessed, and used, without lawful authority, and in and affecting interstate and foreign commerce, a means of identification of another person, with the intent to commit, and to aid or abet, and in connection with, any unlawful activity that constitutes a violation of Federal law: to wit, the knowing hiring and continued employment of unauthorized aliens, in violation of 8 U.S.C. § 1324a(a)(1), (a)(2), and (f)(1), and alien harboring, in violation of 8 U.S.C. § 1324:

| Ct. | Date | Means of Identification |
|---|---|---|
| 17. | 2012 - present | Name, date of birth, social security number, alien registration number of "Reymundo R." |
| 18. | Dec. 2011 - present | Name, date of birth, social security number, alien registration number of "Cirillo R." |
| 19. | May 2012 | Name, date of birth, social security number, alien registration number of "Vidal P." |
| 20. | Mar. 2011 - June 2012 | Name, date of birth, social security number, alien registration number of "Selena C." |
| 21. | Mar. 2011 - 2012 | Name, date of birth, social security number, alien registration number of "Duane C." |
| 22. | 2012 - present | Name, date of birth, social security number, alien registration number of "Michael L." |
| 23. | July 2011 - July 2012 | Name, date of birth, social security number, alien registration number of "Noel G." |

| 24. | July 2012 - present | Name, date of birth, social security number, alien registration number of "Jorge J.S." |
| 25. | May 2011 - May 2012 | Name, date of birth, social security number, alien registration number of "Linda M." |
| 26. | May 2011 - Dec. 2012 | Name, date of birth, social security number, alien registration number of "Yasinya R." |
| 27. | Feb. 2012 | Name, date of birth, social security number, alien registration number of "Debbie G." |
| 28. | Nov. 2011 - present | Name, date of birth, social security number, alien registration number of "Antonio M." |
| 29. | 2012 - present | Name, date of birth, social security number, alien registration number of "Jacob G." |
| 30. | 2012 - present | Name, date of birth, social security number, alien registration number of "Eduardo L." |

In violation of Title 18, United States Code, Section 1028(a)(7) and (b)(2).

## COUNTS 31-54
### (Immigration Document Fraud)

100.    The factual allegations in Paragraphs 1 through 99 are incorporated by reference and re-alleged as though fully set forth herein.

101.    On or about the dates set forth below, each instance being a separate count of this Indictment, in the District of Arizona and elsewhere, defendants THE DFC ENTITIES, RUIZ-GONZALEZ, VAZQUEZ-ESCORCZA, HERNANDEZ, EDLUND, AGUILAR-GASTELUM, FLORES-ARRELLANO, BACA, DOMINGUEZ, ALDACO, MI. MEJIA, MA. MEJIA, ZARATE, JIMENEZ, and CORTNER used an identification document knowing (and having reason to know) that the document was not issued lawfully for the use of the possessor, and used an identification document knowing (and having reason to know) that the document was false, and used a false attestation, all for the purpose of satisfying a requirement of section 274A(b) of the Immigration and Nationality Act:

| Ct. | Date | Description of Offense |
|---|---|---|
| 31. | 2011 | Re-hiring RUIZ-GONZALEZ using identication document that was false and/or not lawfully issued to RUIZ-GONZALEZ and/or using false attestation of identity |
| 32. | Dec. 2011 | Re-hiring VAZQUEZ-ESCORCZA using identication document that was false and/or not lawfully issued to VAZQUEZ-ESCORCZA and/or using false attestation of identity |
| 33. | May 2012 | Re-hiring Albertico G.S. using identication document that was false and/or not lawfully issued to Albertico G.S. and/or using false attestation of identity |
| 34. | 2011 | Re-hiring FLORES-ARRELLANO using identication document that was false and/or not lawfully issued to FLORES-ARRELLANO and/or using false attestation of identity |
| 35. | Sept. 2011 | Re-hiring Criseria B.G. using identication document that was false and/or not lawfully issued to Criseria B.G. and/or using false attestation of identity |
| 36. | May 2011 | Re-hiring Efren T.V. using identication document that was false and/or not lawfully issued to Efren T.V. and/or using false attestation of identity |
| 37. | July 2011 | Re-hiring Eladio P.L. using identication document that was false and/or not lawfully issued to Eladio P.L. and/or using false attestation of identity |
| 38. | July 2012 | Re-hiring Eladio P.L. for a second time using identication document that was false and/or not lawfully issued to Eladio P.L. and/or using false attestation of identity |
| 39. | May 2011 | Re-hiring Margarita B.G. using identication document that was false and/or not lawfully issued to Margarita B.G. and/or using false attestation of identity |

| 40. | Dec. 2011 | Re-hiring ZARATE using identication document that was false and/or not lawfully issued to ZARATE and/or using false attestation of identity |
| 41. | May 2011 | Re-hiring Rosalba L.V. using identication document that was false and/or not lawfully issued to Rosalba L.V. and/or using false attestation of identity |
| 42. | Feb. 2012 | Re-hiring Rosalba L.V. for a second time using identication document that was false and/or not lawfully issued to Rosalba L.V. and/or using false attestation of identity |
| 43. | Nov. 2011 | Re-hiring Miguel R.C. using identication document that was false and/or not lawfully issued to Miguel R.C. and/or using false attestation of identity |
| 44. | 2011 | Re-hiring Jaime G. using identication document that was false and/or not lawfully issued to Jaime G. and/or using false attestation of identity |
| 45. | 2012 | Re-hiring Lino M.V. using identication document that was false and/or not lawfully issued to Lino M.V. and/or using false attestation of identity |
| 46. | Dec. 2011 | Re-hiring Hugo D. using identication document that was false and/or not lawfully issued to Hugo D. and/or using false attestation of identity |
| 47. | 2011 | Re-hiring Martin H.V. using identication document that was false and/or not lawfully issued to Martin H.V. and/or using false attestation of identity |
| 48. | Mar. 2012 | Re-hiring Candido G.R. using identication document that was false and/or not lawfully issued to Candido G.R. and/or using false attestation of identity |
| 49. | Dec. 2011 | Re-hiring Sergio F.C. using identication document that was false and/or not lawfully issued to Sergio F.C. and/or using false attestation of identity |

| 50. | May 2012 | Re-hiring Ricardo Z.C. using identication document that was false and/or not lawfully issued to Ricardo Z.C. and/or using false attestation of identity |
| 51. | Nov. 2011 | Re-hiring Guillermo N.H. using identication document that was false and/or not lawfully issued to Guillermo N.H. and/or using false attestation of identity |
| 52. | Dec. 2011 | Re-hiring Ildifonzo R.P. using identication document that was false and/or not lawfully issued to Ildifonzo R.P. and/or using false attestation of identity |
| 53. | Jan. 2012 | Re-hiring Karla V.H. using identication document that was false and/or not lawfully issued to Karla V.H. and/or using false attestation of identity |
| 54. | June 2011 | Re-hiring David A.R. using identication document that was false and/or not lawfully issued to David A.R. and/or using false attestation of identity |

In violation of Title 18, United States Code, Section 1546(b).

### COUNTS 55-78
### (False Statement)

102.    The factual allegations in Paragraphs 1 through 101 are incorporated by reference and re-alleged as though fully set forth herein.

103.    On or about the dates set forth below, each instance being a separate count of this Indictment, in the District of Arizona and elsewhere, defendants THE DFC ENTITIES, RUIZ-GONZALEZ, VAZQUEZ-ESCORCZA, HERNANDEZ, EDLUND, AGUILAR-GASTELUM, FLORES-ARRELLANO, BACA, DOMINGUEZ, ALDACO, MI. MEJIA, MA. MEJIA, ZARATE, JIMENEZ, and CORTNER, in any matter within the jurisdiction of the executive, legislative, and judicial branch of the Government of the United States, knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation:

| Ct. | Date | False Statment |
| --- | --- | --- |

25

| 55. | 2011 | Including false information in Form I-9 when re-hiring RUIZ-GONZALEZ |
| 56. | Dec. 2011 | Including false information in Form I-9 when re-hiring VAZQUEZ-ESCORCZA |
| 57. | May 2012 | Including false information in Form I-9 when re-hiring Albertico G.S. |
| 58. | 2011 | Including false information in Form I-9 when re-hiring FLORES-ARRELLANO |
| 59. | Sept. 2011 | Including false information in Form I-9 when re-hiring Criseria B.G. |
| 60. | May 2011 | Including false information in Form I-9 when re-hiring Efren T.V. |
| 61. | July 2011 | Including false information in Form I-9 when re-hiring Eladio P.L. |
| 62. | July 2012 | Including false information in Form I-9 when re-hiring Eladio P.L. for a second time |
| 63. | May 2011 | Including false information in Form I-9 when re-hiring Margarita B.G. |
| 64. | Dec. 2011 | Including false information in Form I-9 when re-hiring ZARATE |
| 65. | May 2011 | Including false information in Form I-9 when re-hiring Rosalba L.V. |
| 66. | Feb. 2012 | Including false information in Form I-9 when re-hiring Rosalba L.V. for a second time |
| 67. | Nov. 2011 | Including false information in Form I-9 when re-hiring Miguel R.C. |
| 68. | 2011 | Including false information in Form I-9 when re-hiring Jaime G. |
| 69. | 2012 | Including false information in Form I-9 when re-hiring Lino M.V. |
| 70. | Dec. 2011 | Including false information in Form I-9 when re-hiring Hugo D. |
| 71. | 2011 | Including false information in Form I-9 when re-hiring Martin H.V. |
| 72. | Mar. 2012 | Including false information in Form I-9 when re-hiring Candido G.R. |
| 73. | Dec. 2011 | Including false information in Form I-9 when re-hiring Sergio F.C. |
| 74. | May 2012 | Including false information in Form I-9 when re-hiring Ricardo Z.C. |
| 75. | Nov. 2011 | Including false information in Form I-9 when re-hiring Guillermo N.H. |
| 76. | Dec. 2011 | Including false information in Form I-9 when re-hiring Ildifonzo R.P. |
| 77. | Jan. 2012 | Including false information in Form I-9 when re-hiring Karla V.H. |
| 78. | June 2011 | Including false information in Form I-9 when re-hiring David A.R. |

In violation of Title 18, United States Code, Section 1001(a)(2).

# FORFEITURE ALLEGATION

104.    The factual allegations in Paragraphs 1 through 103 are incorporated by reference and re-alleged as though fully set forth herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(6)(A) and Title 28, United States Code, Section 2461(c).

105.    Pursuant to 18 U.S.C. § 982(a)(6), the Court shall order that each defendant convicted of the "Pattern/Practice of Knowingly Employing Unauthorized Aliens" offense in Count 1 of this Indictment, the 18 U.S.C. § 371 offense in Count 2 of this Indictment, and/or any of the 18 U.S.C. § 1546(b) offenses in Counts 31-54 of this Indictment, forfeit to the United States any conveyance, including any vessel, vehicle, or aircraft, used in the commission of the offense(s), and any property, real or personal, that constitutes, or is derived from, or is traceable to the proceeds obtained directly or indirectly from the commission of the offense(s), and any property, real or personal, that that was used to facilitate, or was intended to be used to facilitate, the commission of the offense(s).

106.    The property to be forfeited includes, but is not limited to, the following:

| No. | Location Name | Location Address |
|-----|---------------|------------------|
| 1 | Paradise Village | 12020 N. Tatum Blvd. Phoenix, AZ 85028 |
| 2 | 20th & Highland | 1954 E. Highland Ave. Phoenix, AZ 85016 |
| 3 | Tierra Buena | 15515 N Scottsdale Rd. Scottsdale, AZ 85250 |
| 4 | Scottsdale & Bell | 16610 N. Scottsdale Rd. Phoenix, AZ 85254 |
| 5 | 84th & Bell | 8369 W. Bell Road Peoria, AZ 85345 |
| 6 | 3rd & Bell | 315 W. Bell Road Phoenix, AZ 85023 |
| 7 | Danny's Gourmet Market | 21001 N. Tatum Blvd. Phoenix, AZ 85050 |
| 8 | 83rd & Union Hills | 18736 N 83rd Avenue Peoria, AZ 85345 |

| 9 | Happy Valley | 2501 W. Happy Valley Rd.<br>Phoenix, AZ 85027 |
| 10 | Raintree & Northsight | 14717 N. Northsight Blvd.<br>Scottsdale, AZ 85260 |
| 11 | Crossroads | 4027 S. Gilbert Road<br>Gilbert, AZ 85297 |
| 12 | San Tan | 2870 S. Market St.<br>Gilbert, AZ 85296 |
| 13 | Tempe Towne | 2090 E. Rio Salado Pkwy.<br>Tempe, AZ 85281 |

107.    If any of the property described above or any forfeitable property, as a result of any act or omission of any of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property from each convicted defendant pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

/s/ _____
FOREPERSON OF THE GRAND JURY
Date: August 14, 2013

JOHN S. LEONARDO
United States Attorney
District of Arizona

/s/ _____
DOMINIC LANZA
LISA E. JENNIS
Assistant U.S. Attorneys